UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOSE RAMIREZ, :
                Plaintiff, :
 :
v. :
 : **OPINION AND ORDER**
ANTHONY J. ANNUCCI, Acting :
Commissioner of the New York State : 17 CV 3825 (VB)
Department of Corrections and Community :
Supervision; FREDERICK BERNSTEIN, :
Medical Director; THOMAS GRIFFIN, :
Superintendent; SGT. DURLAND; C.O. :
WICKHAM; and C.O. FOX, :
                Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff José Ramirez, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983 ("Section 1983") against defendants Anthony Annucci,[1] Dr. Frederick Bernstein,[2] the former medical director at Green Haven Correctional Facility ("Green Haven"), Superintendant Thomas Griffin, Correction Officer ("C.O.") Kerbin Wickham, C.O. Kevin Fox, and Sergeant Timothy Durland,[3] alleging violations of his First and Eighth Amendment rights.

Before the Court is defendants' partial motion to dismiss the complaint pursuant to Rule 12(b)(6). (Doc. #23).

For the reasons set forth below, the motion is GRANTED.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

---

[1]     Defendant Annucci is incorrectly sued herein as Anthony "Annuci."

[2]     Defendant Bernstein is incorrectly sued herein as Frederick "Burstein."

[3]     Defendant Durland is incorrectly sued herein as Sergeant "Durlam."

1

**BACKGROUND**

For the purpose of deciding the motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint[4], considers all documents incorporated by reference therein, and draws all reasonable inferences in plaintiff's favor, as summarized below.

I.      Medical Treatment at Green Haven

On June 23, 2011, plaintiff, then a prisoner at Green Haven, underwent lumbar surgery at Putnam Hospital Center. After his surgery, plaintiff returned to Green Haven, where he alleges he was in severe pain, was unable to walk, and had breathing problems, none of which plaintiff suffered before the surgery. After repeated attempts to receive medical care to remedy these issues, plaintiff received an MRI, which revealed a bone fragment which "should have been removed" during the June 23, 2011, surgery. (Opp. at 3).[5]

On January 12, 2012, plaintiff underwent a second surgery at Putnam Hospital Center. Plaintiff alleges "there was an incident that happened during the surgery." (Compl. at 4).[6] Plaintiff contracted an infection for which he was put on intravenous antibiotics and remained hospitalized for four days.

When plaintiff returned to Green Haven, he requested physical therapy and placement in the unit for physically disabled inmates (the "UPD"). At this time, plaintiff alleges he was between healthcare providers as his last one had left Green Haven. Plaintiff went to sick call

---

[4]     In consideration of plaintiff's pro se status, the Court also draws on facts alleged for the first time in plaintiff's opposition to the motion to dismiss.

[5]     "Opp. at __" refers to the page numbers printed on the bottom center of each page of plaintiff's opposition to the motion to dismiss. (Doc. #30).

[6]     "Compl. at __" refers to the automatically generated page numbers that appear at the top of the complaint filed on the ECF docket.

with severe chest, lung, bladder, and sinus infections. He was referred to his new provider, Dr. Pagan, who prescribed him medication for the infections and increased plaintiff's pain medications. Dr. Pagan also requested plaintiff be housed in the UPD.

Plaintiff alleges defendant Bernstein, the Green Haven medical director at the time, denied plaintiff's placement in the UPD.

## II.  Physical Abuse at Green Haven

Plaintiff also alleges he was "repeatedly physically abused by officers." (Compl. at 4). In particular, on August 6, 2015, plaintiff asserts defendants Wickham, Fox, and Durland assaulted him. Plaintiff alleges Fox "tripped [plaintiff's] wheelchair over and started to kick and punch [plaintiff]." (Id.). Plaintiff alleges Wickham and Durland also kicked and punched him.

Plaintiff asserts Wickham, Fox, and Durland then fabricated a false disciplinary report, for which plaintiff was sent to the special housing unit ("SHU") at Five Points Correctional Facility ("Five Points").

## III.  Medical Treatment at Five Points

When plaintiff arrived at Five Points, he complained about "severe pain." (Compl. at 5). Plaintiff alleges staff at Five Points told him "they do not have sufficient staff" and plaintiff should be patient. (Id.). When plaintiff was seen by medical staff, his medical provider found "further injuries to the upper part" of his body, in addition to his previously existing lumbar injuries. (Id.).

Plaintiff asserts claims for constitutionally deficient medical care and excessive force pursuant to the Eighth Amendment, and a First Amendment retaliation claim. He pleads injuries of a herniated disc, nerve damage, and spinal stenosis.

The complaint is dated March 27, 2017. The envelope is post-marked May 16, 2017. The Court's pro se office received the complaint on May 19, 2017. At the time of filing, plaintiff was incarcerated at Five Points, where he remains to date.

**DISCUSSION**

I.     Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). "Even in a

4

pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II. Medical Care Claims

Liberally construed, plaintiff appears to bring state law claims for medical malpractice and negligence arising from his two back surgeries and an Eighth Amendment claim under Section 1983 arising from constitutionally inadequate medical care at Green Haven and Five Points.

A. Statute of Limitations

Defendants argue claims regarding the 2011 and 2012 back surgeries are time-barred. The Court agrees.

The Court may dismiss an action for failure to state a claim based on statute of limitations only if, on the face of the complaint, the claim is clearly untimely. Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999). That is, a plaintiff must "plead[ him]self out of court." In re marchFIRST Inc., 589 F.3d 901, 904–05 (7th Cir. 2009); see also Harris v. City of New York, 186 F.3d at 250.

"The statute of limitations for claims brought under Section 1983 is governed by state law, and in this [Eighth Amendment deliberate indifference] case is the three-year period for personal injury actions under New York State law." Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009). "While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues." Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001) (citation omitted). "Generally speaking, under federal law 'the time of accrual is that

point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" Covington v. City of New York, 171 F.3d 117, 121 (2d Cir. 1999) (quoting Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980)).

For purposes of calculating the statute of limitations, a pro se inmate's complaint is deemed filed on the date he delivered it to prison officials for mailing. Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993), modified on other grounds, 25 F.3d 81 (2d Cir. 2004).

Here, plaintiff alleges his complaint was received by the pro se office on March 19, 2017. (Opp. at 5). That date predates the date an affidavit attached to his complaint was notarized, which is April 16, 2017. Therefore, April 16, 2017, is the earliest possible date of filing—the complaint could not have been delivered for mailing before then. See In re Livent, Inc. Noteholders Secs. Litig., 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001) ("a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely"). Accordingly, claims that accrued prior to April 16, 2014—specifically plaintiff's Section 1983 claim arising from the 2011 and 2012 surgeries—are time-barred.

Plaintiff pleads "it is impossible for the Plaintiff to tell what (or who) caused him to be permanently confined to a wheelchair." (Opp. at 10). However, plaintiff was aware of his injuries when he experienced excruciating pain and loss of his ability to walk after the 2011 surgery. Plaintiff had confirmation of his potential claim in 2012, when the bone fragment was found. Plaintiff was also aware of his infection following the 2012 surgery. Plaintiff states he was an "able-bodied man" (Id. at 2) until the day after his 2011 surgery when "he could not walk

6

in any capacity." (Id. at 3). Therefore plaintiff's federal claim related to his back surgeries accrued in 2012 at the latest, and is time-barred.

Moreover, plaintiff does not plead a continuing harm.

"The doctrine of 'continuing harm' precludes a statute of limitations defense where the plaintiff suffers a continuing harm." Allstate Ins. Co. v. Serio, 2000 WL 554221, at *14 (S.D.N.Y. May 5, 2000).[7] "[A] continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred . . . act." Harris v. City of New York, 186 F.3d at 250. "To assert a continuing violation for statute of limitations purposes, the plaintiff must allege both the existence of an ongoing policy of deliberate indifference to his or her serious medical needs and some non-time-barred acts taken in the furtherance of that policy. This test screens out Eighth Amendment claims that challenge discrete acts of unconstitutional conduct or that fail to allege acts within the relevant statutory period that are traceable to a policy of deliberate indifference." Shomo v. City of New York, 579 F.3d at 182 (internal quotation marks and citation omitted).

Here, plaintiff pleads no facts to suggest an ongoing Department of Corrections and Community Supervision ("DOCCS") policy connecting the time-barred surgeries to plaintiff's timely medical care claim for UPD placement. Plaintiff alleges "DOCCS has a policy of providing the bare minimum of treatment." (Opp. at 10). However, independent doctors at an outside hospital performed the 2011 and 2012 surgeries, suggesting they were not subject to any such DOCCS policy. More importantly, plaintiff fails to plead a connection between the initial injuries from the surgeries and the allegedly deficient care he received thereafter. It is not

---

[7] Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

7

enough that plaintiff continues to suffer the pain resulting from the surgeries or requires more medical care because of them. Absent an ongoing policy connecting plaintiff's time-barred claims to his timely claim regarding the UPD, the claims regarding the two surgeries, which occurred long before April 16, 2014, must be dismissed.

In addition, plaintiff's state law medical malpractice and negligence claims for the 2011 and 2012 surgeries are untimely because they were not brought "within two years and six months of the act, omission or failure complained of." N.Y. C.P.L.R. § 214-a.

Here, plaintiff alleges defendants' acts, omissions, and failures occurred on June 23, 2011, and January 12, 2012. Plaintiff filed his complaint more than five years later on April 16, 2017. Accordingly, plaintiff's state law claims arising from the 2011 and 2012 surgeries must be dismissed.[8]

> B. Medical Care at Green Haven

Defendants argue plaintiff's claims against Dr. Bernstein for failure to place plaintiff in UPD must be dismissed because plaintiff does not allege Bernstein's culpable state of mind.

The Court agrees.

To succeed on a claim for constitutionally inadequate medical care under the Eighth Amendment's ban on cruel and unusual punishment, a prisoner must plausibly allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This test has both an objective and a subjective component: plaintiff must establish (i) the alleged deprivation of medical care is "sufficiently

---

[8] Plaintiff's federal and state claims are time-barred even if the date the complaint is dated—March 27, 2017—is the operative date of filing, or even if the date plaintiff says he filed the complaint—March 19, 2017—is deemed the operative date.

serious," and (ii) the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

Accepting the allegations of the complaint as true, Dr. Bernstein's denial of UPD placement does not meet the subjective prong of the constitutionally inadequate medical care standard.

The subjective component of an Eighth Amendment inadequate medical care claim requires a showing that the defendant was aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm. Salahuddin v. Goord, 467 F.3d at 280. "[T]he charged official must act with a sufficiently culpable state of mind." Id. (quoting Wilson v. Seiter, 501 U.S. 294, 300 (1991)). It is well established that "negligence, even if it constitutes medical malpractice, does not, without more," give rise to a constitutional claim. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

Here, plaintiff does not allege Dr. Bernstein acted with a sufficiently culpable state of mind. Plaintiff alleges only, "Medical Director [Bernstein] continued to deny me placement into the U.P.D. Unit. I was continued to be pushed through cracks of the system." (Compl. at 4). Plaintiff does not plead any facts to suggest Bernstein consciously disregarded a substantial risk of serious harm when he denied plaintiff's placement in the UPD. Indeed, plaintiff neither alleges a risk of injury nor an actual injury resulting from the denial of UPD housing.

Accordingly, plaintiff's claim against Dr. Bernstein for deficient medical care at Green Haven must be dismissed.

C.      Medical Care at Five Points

Defendants assert plaintiff failed to exhaust administrative remedies for his claim arising from the allegedly deficient medical care at Five Points as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

The Court agrees.

Under the PLRA, inmates are required to exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). A remedy is unavailable when it is "officially on the books, [but] is not capable of use to obtain relief." Ross v. Blake, 136 S. Ct. 1850, 1859 (2016).

For a New York state prisoner to exhaust a claim, he must comply with the rules of New York's Inmate Grievance Program ("IGP") with respect to that claim. The inmate generally must complete three steps: (i) submit a complaint to the clerk of the Inmate Grievance Resolution Committee ("IGRC") within twenty-one days of the alleged incident, (ii) appeal an adverse decision to the superintendent of the facility within seven days of receipt of the IGRC's written response, and (iii) finally, appeal an unfavorable decision by the superintendent to the Central Office Review Committee ("CORC") within seven days after receipt of the superintendent's written response. 7 N.Y.C.R.R. § 701.5. An aggrieved inmate may appeal to the next level if he has not received a response within the prescribed time frame for each step of the grievance procedure. Id. § 701.6(g)(2).

Following the Supreme Court's decision in Ross v. Blake, 136 S. Ct. at 1859–60, a prisoner's duty to exhaust can be excused only on the rare occasions when (i) an administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (ii) "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use" and "so confusing that . . . no reasonable

10

prisoner can use them"; or (iii) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

In plaintiff's opposition, which the Court liberally construes as supplementing the pleadings, plaintiff appears to provide an exhaustive list of grievances filed while in DOCCS custody. He lists seven "fully exhausted" grievances and attaches supporting documents, none of which pertain to medical treatment at Five Points. (Opp. at 4–5). It seems plaintiff never initiated, let alone exhausted, a grievance for deficient medical care at Five Points. Moreover, these other grievances show plaintiff was fully capable of accessing the grievance system. Therefore, plaintiff did not exhaust the available grievance procedure for his claim arising at Five Points.

Accordingly, plaintiff's Eighth Amendment claim arising from medical treatment received at Five Points must be dismissed.

III.  Assault Claims

Plaintiff brings several constitutional claims arising from the alleged assault on August 6, 2015.

A.  Excessive Force

Although defendants Wickham, Fox, and Durland are not moving to dismiss the excessive force claims arising from the alleged August 6, 2015, incident, defendants argue plaintiff's allegations that he was "repeatedly physically abused by officers" are conclusory. (Compl. at 4).

The Court agrees.

"The test of whether use of force in prison constitutes excessive force contrary to the Eighth Amendment is whether the force was used in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (citing Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "To determine whether defendants acted maliciously or wantonly, a court must examine several factors including: the extent of the injury and the mental state of the defendant, as well as 'the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.'" Scott v. Coughlin, 344 F.3d at 291 (quoting Romano v. Howarth, 998 F.2d 101, 105 (2d Cir 1993)).

Plaintiff's allegations that he was "repeatedly physically assaulted by officers" are insufficient to state a claim. (Compl. at 4). Plaintiff alleges no facts regarding physical abuse except for the August 6, 2015, incident. Plaintiff fails to state who assaulted him, where, when, or why. Accordingly, plaintiff fails to satisfy the basic pleading requirements. Fed. R. Civ. P. 8; Ashcroft v. Iqbal, 556 U.S. at 678.

In addition, to the extent plaintiff's opposition includes an excessive force claim arising from an incident with John Doe defendants on September 25, 2012, for the reasons set forth in Section II.A above, those claims are time-barred. See Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013).

B. First Amendment Retaliation

Plaintiff appears to bring a claim for First Amendment retaliation, alleging defendants Durland, Wickham, and Fox assaulted him and issued a false misbehavior report in retaliation for plaintiff's many grievances.

Plaintiff fails adequately to allege such a claim.

To state a First Amendment retaliation claim, a plaintiff must plausibly allege "(1) he has

12

an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." Kuck v. Danaher, 600 F.3d 159, 168 (2d Cir. 2010) (citation omitted).

A defendant's retaliatory motive can be established by circumstantial evidence. Hartman v. Moore, 547 U.S. 250, 260 (2006). "While a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." Gagliardi v. Vill. of Pawling, 18 F.3d 188, 195 (2d Cir. 1994).

"A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009). There is no bright-line rule in this Circuit for what constitutes "close in time"; some courts have found as little as three months too long to infer retaliatory motive, but others have found gaps as long as eight months are close enough in time to infer retaliatory motive. Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty., 252 F.3d 545, 554–55 (2d Cir. 2001) (collecting cases).

Here, although filing a grievance is constitutionally protected speech, Gill v. Pidlypchak, 389 F.3d 379 (2d Cir. 2004), plaintiff fails adequately to plead defendants' retaliatory motive. At the time of the alleged August 6, 2015, incident, plaintiff had last filed a grievance on March 6, 2015. The five-month interval between the protected speech and the alleged retaliation, without more, is too long to infer a retaliatory motive. The absence of retaliatory motive is underscored by the myriad grievances plaintiff filed, none of which previously elicited such a

reaction. Moreover, it is not clear why defendants Fox, Wickham, and Durland would be angry about medical care grievances, which do not implicate them or other correction officers.

Accordingly, the First Amendment retaliation claim must be dismissed.

IV.     Remaining Defendants

Plaintiff asserts supervisory claims against defendants Commissioner Annucci and Superintendent Griffin. Plaintiff alleges Annucci and Griffin were "informed of the violation due to Plaintiff's appeals of his grievance to the Superintendent and the CORC." (Opp. at 13).

These allegations are insufficient to state a claim against Annucci or Griffin.

"[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013). Supervisory liability can be premised on allegations that "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong" or "the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). After Ashcroft v. Iqbal, however, district courts within this circuit have been divided as to whether claims alleging personal involvement under these Colon factors remain viable. See Marom v. City of New York, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016) (collecting cases). The Second Circuit has yet to resolve this dispute. Id.

Here, having found no Eighth Amendment claim for constitutionally deficient medical care, plaintiff's supervisory claim against Annucci and Griffin premised on that claim must be dismissed. Regarding the excessive force claim, there was no ongoing violation for Annucci or

14

Griffin to remedy after the alleged physical assault.  Because there was nothing for Annucci or Griffin to do, they cannot be held liable for their failure to act.

Accordingly, the supervisory claims against defendants Annucci and Griffin must be dismissed.

## CONCLUSION

Defendants' partial motion to dismiss is GRANTED.

The only claim remaining in this case is the excessive force claim arising from the incident alleged to have occurred on August 6, 2015.

Defendants Fox, Wickham, and Durland shall file an answer by September 24, 2018.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion.  (Docs. ##22, 23).

Dated: September 10, 2018
      White Plains, NY

                        SO ORDERED:

                        Vincent L. Briccetti
                        United States District Judge