UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOSE RAMIREZ,  :
                    Plaintiff,  :
v.  :  **OPINION AND ORDER**
  :
FREDERICK BERNSTEIN, Medical Director;  :  17 CV 3825 (VB)
SGT. TIMOTHY DURLAND; C.O. KERBIN  :
WICKHAM; and C.O. KEVIN FOX,  :
                    Defendants.  :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Jose Ramirez brings this action against Dr. Frederick Bernstein, Sergeant ("Sgt.") Timothy Durland, Correction Officer ("C.O.") Kerbin Wickham, and C.O. Kevin Fox, pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights, the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act").

    Now pending is plaintiff's motion for leave to amend the complaint and re-assert claims against Dr. Bernstein. (Doc. #82).

    For the following reasons, the motion for leave to amend is GRANTED.

    This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

    The Court presumes the parties' familiarity with the procedural and factual background of this case and recites herein only those facts necessary to adjudicate the pending motion.

    At all relevant times, plaintiff was incarcerated at Green Haven Correctional Facility ("Green Haven") in Stormville, New York.

1

I.      Factual Allegations

In the proposed amended complaint ("PAC"), plaintiff alleges he lost effective use of his legs and was confined to a wheelchair after two "botched" back surgeries.[1]  He claims that, in October 2013, his primary care provider recommended to Dr. Frederick Bernstein, the medical director of Green Haven, that plaintiff be transferred to the "UPD," a housing unit for physically disabled inmates.  According to plaintiff, he filed grievances in November 2013, complaining that Dr. Bernstein refused to admit him to the UPD and requesting assistance moving around the prison, entering and exiting his cell, and accessing the shower.  Plaintiff claims these grievances were re-filed numerous times until, in December 2013, the Inmate Grievance Resolution Committee ("IGRC") acknowledged receipt of plaintiff's request for admittance to the UPD.

Plaintiff alleges that, in February 2014, Dr. Bernstein acknowledged plaintiff suffered from "lower extremity weakness," but nevertheless denied plaintiff's requests for reasonable accommodations and admittance to the UPD.  (Doc. #83-1 ("PAC") ¶ 35).

Plaintiff also alleges that, on July 14, 2014, Dr. Bernstein responded to a letter plaintiff wrote to the superintendent of Green Haven acknowledging his serious medical conditions and his need for a wheelchair, but stating plaintiff was "considered for transfer/admission to the UPD[, but] [t]he UPD Interdisciplinary Committee did not approve [him] for admission to the UPD."  (PAC ¶ 38).  Plaintiff claims he then filed several grievances requesting reasonable accommodations, including placement in the UPD, physical therapy, a shower chair, and a wheelchair-accessible cell.  According to plaintiff, Dr. Bernstein was either copied on or

---

[1] For the purpose of deciding the motion to amend, the Court accepts as true all well-pleaded allegations in the PAC, including all documents incorporated by reference therein, and draws all reasonable inferences in plaintiff's favor.  See Krys v. Pigott, 749 F.3d 117, 134 (2d Cir. 2014).

complained about in these grievances. He alleges Dr. Bernstein nevertheless "continued to ignore his medical issues and needs." (Id. ¶¶ 41–46).

Plaintiff further alleges that "[t]he denial of placement in the UPD at Green Haven, despite being wheelchair bound, prevented [him] from carrying out basic daily activities without incurring pain, humiliation, or risk of serious injury." (PAC ¶ 51). Plaintiff claims he suffered scarring as a result of dragging himself from his wheelchair into his bed. He also claims his cell was often unsanitary because he was unable to clean without assistance. Plaintiff allegedly struggled to shower because he was denied the use of a shower chair, which forced him to either: (i) attempt to hold himself up in the shower, (ii) request that a fellow inmate help him shower or help carry his wheelchair into the shower (causing it to smell), or (iii) skip showers altogether.

II.     Relevant Procedural History

Plaintiff commenced this action by filing a pro se complaint in May 2017. The original complaint brought claims against several Green Haven prison officials, including Dr. Bernstein. Plaintiff's allegations concerned: (i) his medical treatment at Green Haven, including two allegedly botched surgeries and his denial of placement in the UPD, and (ii) an alleged assault by Sgt. Durland, C.O. Wickham, and C.O. Fox.

By Order dated September 11, 2018, the Court dismissed claims related to plaintiff's medical treatment because his surgeries occurred outside of the statute of limitations and the original complaint failed to allege Dr. Bernstein acted with the requisite culpability when denying plaintiff admittance to the UPD. (Doc. # 42 at 5–9). Defendants did not move to dismiss claims related to the alleged assault, and discovery has proceeded.

In July 2019, the Court granted plaintiff's application for the Court to request pro bono counsel on his behalf. (Doc. #64). In October 2019, pro bono counsel appeared in the case.

(Doc. #67). And in April 2020, plaintiff filed the instant motion for leave to amend the complaint and add claims against Dr. Bernstein under Section 1983 for violations of the Eighth Amendment, Title II of the ADA, and Section 504 of the Rehabilitation Act. (Doc. #82).

## DISCUSSION

I.   Legal Standard

Rule 15(a)(2) instructs courts to "freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). "A pro se litigant should be afforded every reasonable opportunity to demonstrate he has a valid claim," Satchell v. Dilworth, 745 F.3d 781, 785 (2d Cir. 1984), and should be granted leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). This is especially so after the appointment of pro bono counsel. See DeCarlo v. Fry, 141 F.3d 56, 62 (2d Cir. 1998).

When a proposed amended complaint adds a new party, Rule 21 governs whether joinder is proper. Rule 21 "grants [courts] broad discretion to permit a change in the parties at any stage of a litigation." Four Star Cap. Corp. v. Nynex Corp., 183 F.R.D. 91, 98 (S.D.N.Y. 1997). "Although Rule 21, and not Rule 15(a) normally governs the addition of new parties to an action, the same standard of liberality applies under either Rule." See FTD Corp. v. Banker's Trust Co., 954 F. Supp. 106, 109 (S.D.N.Y. 1997).

Courts may deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 199 (2d Cir. 2007). However, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993).

4

II.   Timeliness and Undue Prejudice

Defendants argue leave to amend should be denied because amendment would prejudice defendants and cause undue delay by requiring the reopening of discovery and the retention of expert witnesses, delaying resolution of the action and causing defendants to incur additional expenses.

The Court disagrees.

District courts may deny leave to amend "where the motion is made after inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990).  However, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny" leave to amend.  State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981).  "[T]he longer the period of unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice."  Block v. First Blood Assocs., 988 F.2d at 350.

Whether an amendment would result in prejudice depends upon whether it would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Block v. First Blood Assocs., 988 F.2d at 350. "[T]he fact that one party has spent time and money preparing for trial will usually not be deemed prejudice sufficient to warrant a deviation from the rule broadly allowing amendment to pleadings." Monahan v. New York City Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000). However, courts are "most hesitant to allow amendment where doing so unfairly surprises the

5

non-movant and impedes the fair prosecution of the claim." Id.  Unfair surprise and disadvantage may result when, for example, a party lacks knowledge of the facts giving rise to the new claim.  See, e.g., id.; Block v. First Blood Assocs., 988 F.2d at 351.

Plaintiff has not unduly delayed in seeking leave to amend in relation to when the Court granted his application for the appointment of pro bono counsel in July 2019.  After filing this action in May 2017, plaintiff made numerous requests for the appointment of pro bono counsel.  Once counsel was appointed, the correctional facility had difficulty locating plaintiff's medical records and the parties jointly requested several extensions of the deadline for plaintiff to file the instant motion.  Plaintiff timely moved to amend on April 24, 2020.  Under these circumstances plaintiff's delay is excusable.

Moreover, granting leave to amend will not cause defendants undue prejudice.  Although discovery has reached an advanced stage and is nearly completed with respect to plaintiff's assault-related claims, "the fact that [defendants have] spent time and money preparing for trial" is insufficient "to warrant a deviation from the rule broadly allowing amendment to pleadings." Monahan v. New York City Dep't of Corr., 214 F.3d at 284.  Nor is the Court persuaded by defendants' argument that the re-addition of Dr. Bernstein to the action may require them to retain experts and conduct expert discovery that would otherwise be unnecessary.  "[T]he burden of undertaking discovery" which would have occurred had Dr. Bernstein not been dismissed from the action "hardly amounts to prejudice outweighing the policy of Rule 15(a) in favor of permitting the parties to obtain an adjudication of the merits." See S.S. Silberblatt, Inc. v. E. Harlem Pilot Block—Bldg. 1 Hous. Dev. Fund Co., 608 F.2d 28, 43 (2d Cir. 1979).

Likewise, no unfair surprise results from re-adding Dr. Bernstein to the action.  Dr. Bernstein was represented by the New York State Attorney General's Office until the Court

dismissed plaintiff's claims against him in September 2018, and there is no indication that the Attorney General's Office will not continue to represent Dr. Bernstein.  See, e.g., Benavidez v. Piramides Mayas, Inc., 2013 WL 1627947, at *5 (S.D.N.Y. April 16, 2013) (finding no unfair surprise or prejudice resulting from granting leave to amend and adding defendant who was named when action was commenced).  The Court cannot conclude Dr. Bernstein lacks notice of this suit or that defendants would otherwise be disadvantaged by his being re-added to the suit at this stage.

III.    Futility

Defendants argue plaintiff's motion should be denied because his proposed amendments are futile.

The Court disagrees.

A.    Legal Standard

"Leave to amend may properly be denied if the amendment would be futile."  Krys v. Pigott, 749 F.3d at 134.  An amendment is futile when "the proposed new pleading fails to state a claim on which relief can be granted."  See id.  "The adequacy of a proposed amended complaint . . . is to be judged by the same standards as those governing" a motion to dismiss under Rule 12(b)(6).  See id.

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of a complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

The complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678.

### B. Eighth Amendment

The PAC asserts two types of Eighth Amendment claims against Dr. Bernstein. First, plaintiff alleges a claim for constitutionally inadequate medical care. Second, plaintiff alleges he was subjected to inhumane conditions of confinement. Defendants argue the PAC fails to state a claim in both respects.

The Court disagrees.

#### 1. Constitutionally Inadequate Medical Care

To state a claim for constitutionally inadequate medical care under the Eighth Amendment and Section 1983, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This test has an objective prong and a mens rea prong: a plaintiff must plausibly allege (i) a "sufficiently serious" inadequacy of medical care, and (ii) that the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective prong has two subparts. First, a plaintiff must adequately plead he "was actually deprived of adequate medical care." Salahuddin v. Goord, 467 F.3d at 279. Because

8

"the prison official's duty is only to provide reasonable care," prison officials violate the Eighth Amendment only if they fail "'to take reasonable measures' in response to a medical condition." Id. at 279–80 (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994)).

Second, a plaintiff must plausibly allege "the inadequacy in medical care is sufficiently serious." Id. at 280. Courts assess this by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id. "Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." Id. (quotations and alterations omitted).

The mens rea prong requires the plaintiff to allege "the official acted with deliberate indifference to inmate health." Salahuddin v. Goord, 467 F.3d at 280. "Deliberate indifference is a mental state equivalent to subjective recklessness," and "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Id. Mere negligence does not give rise to an Eighth Amendment violation. See Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010). Accordingly, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle v. Gamble, 429 U.S. at 106.

The PAC plausibly alleges Dr. Bernstein acted with deliberate indifference in denying plaintiff constitutionally adequate medical care. Plaintiff alleges he was deprived of adequate medical care because he was denied both placement in the UPD and accommodations for his

9

wheelchair-bound status. Plaintiff also alleges these deprivations were sufficiently serious. For instance, lack of a wheelchair accessible cell allegedly caused him to suffer repeated injuries when he got into or out of bed; and the lack of a shower chair allegedly caused him to either risk physical injury or humiliation, or to skip showers altogether. These allegations plausibly allege plaintiff was deprived of adequate medical care and that the inadequacy of medical care was sufficiently serious. See, e.g., Shomo v. City of N.Y., 2010 WL 11646793, at *3 (S.D.N.Y. 2010) (partially paralyzed inmate alleged Eighth Amendment violation when he was denied assistance with daily living activities, despite doctors' recommendations, causing injuries, difficulty showering, and humiliation).

The PAC also plausibly alleges Dr. Bernstein acted with the requisite mens rea. Plaintiff claims Dr. Bernstein was aware plaintiff's medical conditions presented a substantial risk to his health: plaintiff's primary care physician recommended to Dr. Bernstein that plaintiff be placed in the UPD, and plaintiff informed Dr. Bernstein of his deteriorating condition on multiple occasions. The PAC plausibly alleges Dr. Bernstein's continued inaction amounted to a conscious disregard of these risks to plaintiff's health and safety. See, e.g., Alster v. Goord, 745 F. Supp. 2d 317, 336 (S.D.N.Y. 2010) (denying summary judgment when plaintiff's "numerous requests, his attorney's letters, and prison records of [his] worsening condition create[d] a fact issue [of] whether Defendants disregarded [his] conditions.").

Plaintiff's proposed claim for constitutionally inadequate medical care is not futile.

    2.    <u>Inhumane Conditions of Confinement</u>

Inhumane conditions of confinement also violate the Eighth Amendment's prohibition on cruel and unusual punishment. See Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002). "The standard for an inhumane conditions claim is identical to that for inadequate medical treatment."

Alster v. Goord, 745 F. Supp. 2d at 335; see Phelps v. Kapnolas, 308 F.3d at 185.  Objectively, the prison official's transgression must be sufficiently serious; subjectively, the official must have acted or failed to act with deliberate indifference to inmate health or safety.  See Phelps v. Kapnolas, 308 F.3d at 185.

Under the objective prong, "while the Constitution does not mandate comfortable prisons, inmates may not be denied the minimal civilized measure of life's necessities."  Alster v. Goord, 745 F. Supp. 2d at 335 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  "Nor may prison officials expose prisoners to conditions that pose an unreasonable risk of serious damage to their future health."  Phelps v. Kapnolas, 308 F.3d at 185 (quotations and alterations omitted).  And "unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment."  Walker v. Schult, 717 F.3d 119, 127 (2d Cir. 2013).

The PAC plausibly alleges plaintiff was subjected to inhumane conditions of confinement.  Plaintiff alleges he was subject to a continual risk of serious injury by having to drag himself to and from his wheelchair and bed.  He also alleges that he was unable to safely shower without risking injury, humiliation, or damage to his wheelchair.  Additionally, his inability to clean his cell allegedly caused the cell to be unsanitary.  The PAC plausibly alleges these conditions posed an unreasonable risk of serious damage to plaintiff's future health.  See Phelps v. Kapnolas, 308 F.3d at 185.  Other courts in this district have found similar allegations stated a claim under the Eighth Amendment for inhumane conditions of confinement.  See, e.g., Alster v. Goord, 745 F. Supp. 2d at 335–37.  For the reasons stated above, the PAC plausibly alleges Dr. Bernstein acted with the requisite mens rea.

Plaintiff's proposed claim for inhumane conditions of confinement is not futile.

3. Personal Involvement

Defendants also argue plaintiff's proposed Eighth Amendment claims are futile because plaintiff insufficiently pleads Dr. Bernstein's personal involvement in the alleged Eighth Amendment violations.

The Court disagrees.

To state a claim under Section 1983, a plaintiff "must plead that [the defendant], through [his or her] own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676. In the Second Circuit, "[t]he personal involvement of a supervisory defendant may be shown by evidence that [, among other methods]: (1) the defendant participated directly in the alleged constitutional violation." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[2]

The PAC plausibly alleges Dr. Bernstein was personally involved in the alleged Eighth Amendment violations. Plaintiff's primary care physician allegedly "recommended to Dr. Bernstein that [plaintiff] be transferred to the UPD," and "Dr. Bernstein denied him access to the UPD despite the recommendation of his primary care provider." (PAC ¶¶ 28, 38). Plaintiff also alleges Dr. Bernstein was continually copied on or complained about in the many grievances plaintiff filed regarding his medical conditions and needs. Taken as true, these facts suggest Dr. Bernstein was personally involved in denying plaintiff admission to the UPD and therefore in the

---

[2] After Ashcroft v. Iqbal, district courts within this Circuit have been divided as to whether claims alleging personal involvement under the second, fourth, and fifth Colon factors remain viable. See Marom v. City of New York, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016), reconsideration granted in part and denied in part, 2016 WL 5900217 (S.D.N.Y. July 29, 2016). Nevertheless, courts in this district appear to agree that at least the first and third Colon factors are unaffected by Ashcroft v. Iqbal. See, e.g., id. at *15 (collecting cases); Hollins v. City of N.Y., 2014 WL 836950, at *13 (S.D.N.Y. Mar. 3, 2014); Bellamy v. Mount Vernon Hosp., 2009 WL 1835838, at *6 (S.D.N.Y. June 26, 2009).

purported violation of plaintiff's Eighth Amendment rights.  See Colon v. Coughlin, 58 F.3d at 873.

Plaintiff's Eighth Amendment claims against Dr. Bernstein are therefore not futile.

C. Title II of the ADA and the Rehabilitation Act

Defendants argue plaintiff's proposed claims for violations of the ADA and Rehabilitation Act fail to state a claim upon which relief can be granted.  They also argue plaintiff's proposed ADA claim is barred by the Eleventh Amendment and that Dr. Bernstein is not a proper defendant under either the ADA or the Rehabilitation Act.

The Court disagrees.

1. Plaintiff States a Claim for Violations of the ADA and Rehabilitation Act

Title II of the ADA prohibits the exclusion of any qualified individual with a disability from the benefits of services, programs or activities of a public entity, by reason of such disability.  See 42 U.S.C. § 12132.  "[T]he plain text of Title II of the ADA unambiguously extends to state prison inmates." Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 213 (1998).  Similarly, Section 504 of the Rehabilitation Act provides that no qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

To plead a violation under Title II and Section 504, a plaintiff must plausibly allege (i) he is a "qualified individual" with a disability; (ii) defendants are subject to the ADA; and (iii) the plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants on the basis of his disability.  Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).

13

"Additionally, to establish a violation under [Section 504], a plaintiff must show that the defendants receive federal funding." Henrietta D. v. Bloomberg, 331 F.3d at 272. Courts otherwise treat claims under Title II of the ADA and Section 504 of the Rehabilitation Act nearly identically. See id. However, the fact that the New York Department of Corrections and Community Supervision ("DOCCS") accepts federal funding is subject to judicial notice. See Degrafinreid v. Ricks, 417 F. Supp. 2d 403, 414 & n.2 (S.D.N.Y. 2006).

The PAC states a claim for relief under both Title II and the Rehabilitation Act. First, plaintiff alleges he is a qualified individual with a disability because he requires a wheelchair for mobility and possesses a limited use of his arms and legs, which make it difficult for him to carry out basic tasks without assistance. See, e.g., Shomo v. City of N.Y., 579 F.3d 176, 185–86 (2d Cir. 2009) (finding prisoner with right arm paralysis and limited use of left arm adequately alleged he was a qualified individual with a disability).

Second, plaintiff alleges Dr. Bernstein, as the medical director of Green Haven, is a DOCCS official and subject to the ADA and the Rehabilitation Act. See Degrafinreid v. Ricks, 417 F. Supp. 2d at 414 & n.2.

Third, plaintiff alleges Dr. Bernstein denied him the benefits of DOCCS services, programs, or activities by refusing to reasonably accommodate his needs. Plaintiff claims Dr. Bernstein's denial of his requests for placement in the UPD prevented him from safely entering and exiting his bed, showering, and cleaning his cell. Plaintiff also claims he was denied other reasonable accommodations, such as a shower chair, a wheelchair accessible cell, and an assistant to help clean his cell, that would have enabled him to safely carry out daily functions while at Green Haven. These allegations are sufficient to state a claim for relief under Title II of the ADA and Section 504 of the Rehabilitation Act. See, e.g., Shomo v. City of N.Y., 579 F.3d

14

at 185–86 (reversing dismissal of ADA and Rehabilitation Act claims brought by disabled inmate denied access to infirmary-style housing and other prison services); Alster v. Goord, 745 F. Supp. 2d at 338–39.

        2.        Plaintiff's Allegations are Sufficient to Abrogate Sovereign Immunity

Defendants argue that the Eleventh Amendment bars plaintiff's suit against Dr. Bernstein as an official of DOCCS and a representative of the State of New York.

The Court disagrees.

"The Eleventh Amendment, with few exceptions, bars federal courts from entertaining suits brought by a private party against a state in its own name." Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993). "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009). And "[t]he real party in interest in an official-capacity suit is the government entity." Henrietta D. v. Bloomberg, 331 F.3d at 288.

However, sovereign immunity is abrogated when a plaintiff sues a state for damages under Title II of the ADA for an actual violation of his Fourteenth Amendment rights. See United States v. Georgia, 546 U.S. 151, 159 (2006). To determine whether a pleading would permit abrogation of sovereign immunity, a court must examine "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." United States v. Georgia,

546 U.S. at 159.  Because the Eighth Amendment's prohibition of cruel and unusual punishment is incorporated to the states through the Fourteenth Amendment, see Robinson v. California, 370 U.S. 660, 667 (1962), allegations of an Eighth Amendment violation may allege a violation of the Fourteenth Amendment.

Because plaintiff alleges Dr. Bernstein's conduct resulted in violations of both the ADA and the Eighth Amendment, plaintiff alleges a violation of his Fourteenth Amendment rights sufficient to abrogate state sovereign immunity.  See, e.g., Alster v. Goord, 745 F. Supp. 2d at 338–39 (denying summary judgment "[b]ecause [the plaintiff's] prison conditions, if true, violated the Eighth and Fourteenth Amendments, [thus] the State's sovereign immunity from Title II claims [was] abrogated under [United States v. Georgia].").  Furthermore, because DOCCS accepts federal funds, it lacks sovereign immunity under the Rehabilitation Act.  See Degrafinreid v. Ricks, 417 F. Supp. 2d at 414.

Defendants argue plaintiff's allegations are insufficient to abrogate state sovereign immunity because, in the Second Circuit, claims for monetary damages under Title II must allege the violation was "motivated by discriminatory animus or ill will based on the plaintiff's disability."  See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 111–12 (2d Cir. 2001).  However, that requirement "only applies to Title II claims based on Equal Protection." Bolmer v. Oliveira, 594 F.3d 134, 146–48 (2d Cir. 2010).  Here, plaintiff's ADA claim is not based on an alleged violation of his right to Equal Protection, and therefore he need not allege Dr. Bernstein was motivated by discriminatory animus or ill will.  See Alster v. Goord, 745 F. Supp. 2d at 339.

### 3. Dr. Bernstein May be Sued in his Official Capacity

Neither Title II nor the Rehabilitation Act permit suits against state officials in their individual capacities. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). However, when a state officer is sued in his or her official capacity under the ADA or the Rehabilitation Act, "it is irrelevant whether the ADA [or Rehabilitation Act] would impose individual liability on the officer sued; since the suit is in effect against the 'public entity,' it falls within the express authorization of the ADA." Henrietta D. v. Bloomberg, 331 F.3d at 288; Harris v. Mills, 572 F.3d at 72.

Defendants argue Dr. Bernstein is not a proper defendant under Title II of the ADA or the Rehabilitation Act because he is not a "public entity," as defined by those statutes. But the Second Circuit's decision in Henrietta D. v. Bloomberg is clear that, to the extent a plaintiff states a claim under Title II that would abrogate state sovereign immunity, the suit may also proceed against an official in his or her official capacity. See Henrietta D. v. Bloomberg, 331 F.3d at 288; see also Alster v. Goord, 745 F. Supp. 2d at 337–38; Degrafinreid v. Ricks, 417 F. Supp. 2d at 411. Thus, because plaintiff's allegations are sufficient to abrogate state sovereign immunity, he may sue Dr. Bernstein in his official capacity.

### D. Statute of Limitations

Finally, defendants argue that each claim plaintiff seeks to add in the PAC is time-barred. Not so.

An amendment may be futile if, on the face of the proposed amendment, the claim is clearly untimely. See Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999); see also Krys v. Pigott, 749 F.3d at 134 ("The adequacy of a proposed amended complaint . . . is to be judged by the same standards as those governing" a motion to dismiss).

17

An amended pleading adding new claims or new parties may be untimely if the pleading does not "relate back" to the date the original complaint was filed. See Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013). Where a complaint was timely filed within the applicable limitations period, an amendment that relates back to the date of that complaint is itself considered timely filed even if the amended pleading falls outside the applicable statute of limitations. See Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 541 (2010). Pleadings relate back if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

The three-year statute of limitations for personal injury actions under New York state law governs claims brought under Section 1983, the ADA, and the Rehabilitation Act. See Shomo v. City of N.Y., 579 F.3d at 181 (Section 1983); Harris v. City of New York, 186 F.3d at 247 (ADA & Rehabilitation Act). The claims accrue when the plaintiff knows or has reason to know of the harm giving rise to the claim. See Shomo v. City of N.Y., 579 F.3d at 181; Harris v. New York, 186 F.3d at 247–48.

As discussed in the Court's Opinion and Order granting-in-part defendants' motion to dismiss, the earliest plaintiff could have filed the original complaint was April 16, 2017. (Doc. #42 at 6). In the original complaint, plaintiff alleged Dr. Bernstein continued to deny his request for placement in the UPD. The PAC thus relates back to the date of the original complaint because it asserts a claim that arose out of the conduct plaintiff attempted to set out in the original complaint. See Fed. R. Civ. P. 15(c)(1)(B). Because plaintiff alleges Dr. Bernstein responded to a letter plaintiff wrote to the superintendent of Green Haven and denied plaintiff admission into the UPD in July 2014, the PAC also plausibly alleges Dr. Bernstein was

18

personally involved in denying plaintiff admittance to the UPD and reasonable accommodations within the limitations period.

Accordingly, the claims plaintiff seeks to add are timely.

## CONCLUSION

The motion for leave to amend is GRANTED.

Plaintiff is directed to file the amended complaint on the docket by December 14, 2020. Defendants shall have until January 11, 2021, to answer, move, or otherwise respond to the amended complaint.

All counsel shall attend a telephone status conference on January 29, 2021, at 10:30 a.m.  Counsel shall use the following information to appear by telephone:

>   Dial-in number:  (888) 363-4749 (toll free) or (215) 446-3663
>   Access code:  1703567

The Clerk is instructed to terminate the motion.  (Doc. #82).

Dated: December 7, 2020
      White Plains, NY

                          SO ORDERED:

                          _____

                          Vincent L. Briccetti
                          United States District Judge